IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OSCAR AVILEZ RODRIGUEZ, | § § § | |
| *Plaintiff,* | § § | SA-18-CV-01259-ESC |
| vs. | § § § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | |
| *Defendant.* | § § | |

**ORDER**

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Original Brief [#17], Defendant's Brief in Support of the Commissioner's Decision [#18], the transcript ("Tr.") of the SSA proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled and that no reversible legal error was committed during the proceedings. The Court will therefore affirm the Commissioner's decision finding Plaintiff not disabled.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#7, #11].

## II. Factual Background

Plaintiff Oscar Avilez Rodriguez filed his application for DIB on June 20, 2017, alleging disability since September 23, 2016. (Tr. [#9] 193–94.) At the time of his DIB application, Plaintiff was a 33-year-old military veteran with an online Bachelor's degree from 2016. (Tr. 193, 223.) Plaintiff's disability application indicates that he served as a Sergeant in the United States Marine Corp from December 2004 to December 2013, during which time he served two tours of duty in Iraq (one in 2006 and one in 2008) and worked as a mechanic for assault amphibian vehicles. (Tr. 187, 223, 248.) After his discharge, Plaintiff worked as a line technician for a car dealership from March 2014 to September 2016. (Tr. 187, 223.) Since then, Plaintiff has continued to work as a self-employed auto mechanic part-time. (Tr. 13.) The related medical conditions upon which Plaintiff based his initial DIB application were post-traumatic stress disorder ("PTSD"), traumatic brain injury, migraines, anxiety, carpal tunnel syndrome, sleep apnea, headaches, limited shoulder mobility, and lower back pain. (Tr. 222.) Plaintiff's application for DIB was denied initially on September 25, 2017 and again upon reconsideration on November 20, 2017. (Tr. 81, 97.)

Following the denial of his claim, Plaintiff requested an administrative hearing. Plaintiff and his attorney Gregory Kordic attended the administrative hearing before Administrative Law Judge ("ALJ") Charles L. Brower on May 3, 2018. (Tr. 27–67.) Plaintiff and vocational expert ("VE") Euchay Gnozi Horsman provided testimony at the hearing. (*Id.*)

The ALJ issued an unfavorable decision on July 30, 2018. (Tr. 11–22.) The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 23, 2016, the alleged disability

onset date. (Tr. 14.) At step two, the ALJ found Plaintiff to have the following severe impairments: migraine headaches, PTSD, mild traumatic brain injury, carpal tunnel syndrome, and mild sleep apnea. (Tr. 14–15.) At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 15.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform work at the medium exertional level with certain additional specifications. (Tr. 15–21.) At step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as an aviation support equipment repairer and auto mechanic. (Tr. 21–22.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act and not entitled to receive DIB. (Tr. 22.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on October 4, 2018. (Tr. 1–3.) On December 4, 2018, Plaintiff filed the instant case, seeking review of the administrative determination.

### III. Governing Legal Standards

**A.      Standard of Review**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience. *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

**B.     Entitlement to Benefits**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant amount in the national economy—regardless of

whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

**C.      Evaluation Process and Burden of Proof**

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2016). In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (internal quotation omitted). An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the

5

fourth step. Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past relevant work. 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made. *Id.* If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability—given the claimant's residual capacities, age, education, and work experience—to do other work. 20 C.F.R. § 404.1520(g). If a claimant's impairment precludes him from performing any other type of work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV. Analysis

Plaintiff raises three points of error in this appeal: (1) the ALJ erred in finding that Plaintiff can return to his former job; (2) the ALJ applied the incorrect legal standard in determining Plaintiff's RFC; and (3) the ALJ erred in failing to analyze the disability determination of the Veteran's Administration. Having considered these arguments in light of the record and governing law, the Court finds that the ALJ did commit any reversible error during the administrative proceedings.

**A.      The ALJ did not err in evaluating Plaintiff's RFC.**

Plaintiff contends the ALJ applied the incorrect legal standard in determining his residual functional capacity. An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight to be given the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Prior to step four, the ALJ determined Plaintiff could perform work at the medium exertional level with various mental, postural, and manipulative limitations as follows:

> Claimant has the residual functional capacity to do work at the medium exertional level: He can lift and/or carry 50 pounds occasionally, 25 pounds frequently; he can stand and/or walk 6 hours and sit 6 hours in an 8-hour workday. He has nonexertional limitations: he cannot climb ladders; he can only frequently climb stairs; he can only frequently balance, stoop, kneel, crouch, or crawl; he can only frequently handle or finger; he can only frequently reach overhead with his upper left extremity; he can only frequently interact with supervisors, co-workers, and the public.

(Tr. 15.) Plaintiff contends this determination was reversible error because (1) the ALJ did not assess any limitations from Plaintiff's severe impairment of migraine headaches; (2) the ALJ did not make a specific finding that Plaintiff could sustain employment on a regular and continuous basis despite his debilitating migraines; and (3) the ALJ overlooked Plaintiff's documented psychiatric limitations from his PTSD, traumatic brain injury ("TBI"), sleep apnea, and depression. The Court finds that none of these alleged errors requires remand, and substantial evidence supports the ALJ's RFC determination.

Regarding Plaintiff's migraine headaches, the ALJ at step two determined that Plaintiff's migraines constituted a severe impairment. (Tr. 14.) However, the ALJ found that Plaintiff's subjective complaints regarding the debilitating effects of his migraines were not consistent with the objective medical evidence. (Tr. 16.) This was not error. The ALJ's opinion demonstrates that he considered the medical opinions in the record, as well as Plaintiff's subjective complaints and description of symptoms, in determining this aspect of Plaintiff's RFC.

The ALJ specifically found that the "medical evidence shows that [Plaintiff's] headaches are essentially controlled with medication (Topomax and Imitrez, Thermazone therapy, and Alpha-Stim therapy." (Tr. 20.) The ALJ further found that "[t]he extent of this control is evidence[d] [sic] by the fact that he still works regularly as a mechanic, and he has consistently refused Botox treatment." (Tr. 20.) In making this finding, the ALJ cited and discussed various

medical records from February to December 2017 that documented Plaintiff's relief of headache symptoms from his prescribed medications and various therapeutic treatments. (Tr. 17–18.) The ALJ specifically noted that Plaintiff complained of persistent headaches when he saw Dr. Noelia Donamaria at the Veterans Administration ("VA") in February 2017 and explained that Dr. Donamaria referred Plaintiff to physical therapy for training on Thermazone, a form of thermal treatment for migraines. (Tr. 17.) The ALJ noted that Plaintiff's migraines continued to improve with the Thermazone treatment throughout 2017 and that Plaintiff consistently refused Botox treatment for his headaches. (Tr. 18.)

The Court's independent review of the medical records finds support for the ALJ's opinion. For example, in March 2017, medical records document that a first in-office Thermazone treatment improved Plaintiff's localized headache pain. (Tr. 696, 955.) Plaintiff thereafter regularly used Thermazone treatments at home to manage his migraine symptoms. In May 2017, records indicate that "using thermazone helps alleviate the headaches, as well as calming [Plaintiff] down" (Tr. 675); in June 2017 Plaintiff reported that he was "using thermazone with good relief," such that his migraine condition was assessed as "stable" (Tr. 662–63); and in October and December 2017, Plaintiff reported that his migraines were "fairly well controlled by taking Sumatriptan and Topiramate" and the Thermazone was "helping well" (Tr. 1156, 1162). "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace*, 813 F.2d at 59). The ALJ did not commit reversible error by not crediting Plaintiff's subjective complaints of debilitating migraine headaches, and substantial evidence supports the ALJ's RFC determination.

Nor was the ALJ required to make a specific finding that Plaintiff could sustain employment on a regular and continuous basis despite his migraines. The Fifth Circuit has specifically rejected the contention that an ALJ must in every decision articulate a separate and explicit finding that a claimant can maintain a job on a sustained basis. *Castillo v. Barnhart*, No. 05-50639, 151 Fed. App'x 334, 335–36 (5th Cir. 2005). Inherent in the definition of residual functional capacity is the understanding that the claimant has an ability to work on a sustained basis. *Dunbar v. Barnhart*, 330 F.3d 670, 671–672 (5th Cir. 2003); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."). However, an ALJ may need to make a specific finding regarding a claimant's ability to maintain work where "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

The *Frank* court gave an example of the type of evidence that might require a separate finding of whether a claimant had the ability to maintain employment on a regular and continuous basis: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* In contrast, a complaint that chronic back pain caused a claimant to have both good and bad days "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). "It is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.*; *cf. Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (finding that while a claimant may be capable of finding a job

and working for short periods of time, it may be that "[t]he nature of the mental impairment is such . . . that the claimant is unable to remain employed for any significant period of time."); *Bates v. Colvin*, No. 3:13-CV-1659-L, 2014 WL 408052, at *8 (N.D. Tex. Jan. 31, 2014) ("Given the episodic nature of [cyclical vomiting syndrome], the ALJ should have made a specific finding regarding Plaintiff's ability to maintain work because his CVS waxes and wanes in its manifestation of disabling symptoms.").

Plaintiff's allegation that he suffers from migraines that vary in frequency, intensity, and duration, depending on the day and treatment, is not the type of impairment requiring a separate finding of the ability to work on a regular and continuous basis. This is particularly true given that the ALJ expressly found Plaintiff's subjective complaints as to the debilitating nature of his migraines to be not fully credible due to the objective medical evidence that he was benefitting from various treatments. Plaintiff has failed to establish that remand is required to address his ability to sustain employment.

Finally, the Court disagrees with Plaintiff's contention that the ALJ overlooked Plaintiff's documented psychiatric limitations from PTSD, TBI, sleep apnea, and depression. To the contrary, the ALJ expressly discussed numerous medical opinions in the record regarding Plaintiff's psychiatric impairments and concluded that Plaintiff has only mild cognitive impairment from his TBI; that his PTSD is controlled with medication; and that his sleep apnea is mild and improved by the use of a CPAP ("continuous positive airway pressure") mask, as are his mental health symptoms. (Tr. 20.) Moreover, the record contains evidence that Plaintiff repeatedly failed to appear for various mental health appointments and sleep medicine appointments throughout 2016 and 2017. (Tr. 710, 718, 723.) A claimant's noncompliance with treatment is a proper factor for the ALJ to consider in assessing credibility. *Villa*, 895 F.2d at

1024. There are numerous notations in the medical records regarding Plaintiff's normal cognitive and neurological exams, appropriate and pleasant behavior, and lack of any mental distress, particularly late into 2017 and early 2018. (Tr. 668, 676, 681, 705. 1154, 1172, 1181.) And in an evaluation in June 2017, Plaintiff reported that things were overall better and stable, and he was assessed with only mild TBI and no limitation of mental function. (Tr. 667–668.) Substantial evidence supports the ALJ's RFC.

**B.      The ALJ did not err in declining to credit or analyze the VA's disability rating.**

Plaintiff also argues that the ALJ erred in failing to credit and analyze the VA's finding that Plaintiff suffers from a 100% service-connected disability based on his PTSD and migraines. (*See* Tr. 210–20.) This is not a basis for remand.

On January 18, 2017, the Social Security Administration published a revision to 20 C.F.R. § 404.1504 regarding VA disability determinations. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). This new rule provides the following:

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. Plaintiff applied for benefits and the ALJ made his decision after March 27, 2017, when the revisions to 20 C.F.R. § 404.1504 became effective. The ALJ's opinion acknowledged the July 2016 VA disability determination but found it not to be binding because

it was based on VA standards and not social security law and regulations. (Tr. 21.) The ALJ also cited § 404.1504 as relieving him of any obligation to provide an analysis of the 100% VA disability rating but noted that he had considered the supporting evidence underlying the VA's decision. (*Id.*)

While acknowledging the March 2017 new regulation, Plaintiff directs the Court to Fifth Circuit case law prior to the amendment in support of its argument that the ALJ nonetheless violated binding circuit law in declining to give the VA decision more thorough treatment. *See Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) (Although "[a] VA rating is certainly not binding on the Secretary, . . . it is evidence that should be considered and is entitled to great weight."). The Fifth Circuit opinion cited by Plaintiff was issued based on a former regulatory scheme. Because the ALJ issued his decision when the revised version of § 404.1504 was in effect, this new regulation provides the appropriate basis for the ALJ's treatment of a VA disability rating. *See Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *5 (N.D. Tex. Sept. 30, 2015) (overruling objection based on former regulatory scheme requiring further development of record evidence from treating physician because new regulation abandoned former mandatory requirement as applied in Fifth Circuit case law).

C. **The ALJ did not commit reversible error in concluding Plaintiff could return to his past relevant work.**

Plaintiff contends the ALJ erred in finding he could return to his former work as an aviation support equipment repairer and auto mechanic. According to Plaintiff, the ALJ misconstrued his past relevant work for the military because he never worked as an aviation support equipment repairer and there is no evidence in the record that he could perform the skilled work required of an auto mechanic. Accordingly, Plaintiff maintains the ALJ should

have proceeded to step five and evaluated whether there is other work in the national economy he could perform, despite his limitations.

The ALJ acknowledged in his opinion that Plaintiff's actual title while working in the U.S. Marine Corp was "assault amphibian vehicle mechanic." (Tr. 13.) At the administrative hearing, however, the VE classified this job as what the Dictionary of Occupational Titles ("DOT") calls "aviation support equipment repairer" because there is no DOT classification for Plaintiff's actual military position. (Tr. 60.) The ALJ recognized that Plaintiff's job as performed in the military was not a "perfect match" for the identified position in the DOT but concluded that the VE's characterization of the position as an aviation support equipment repairer was "close enough." (Tr. 64–65.) The ALJ also asked Plaintiff questions regarding the differences between the DOT description and his job as actually performed. (Tr. 64–65.) Plaintiff testified that, while in the military, he performed his job at a very heavy level, frequently carrying 100 pounds, versus the characterization of the position in the DOT as light, requiring only frequent lifting of 10 pounds. (Tr. 64–65.)

Plaintiff argues that there is no evidence to demonstrate that he is capable of performing his past job as an assault amphibian vehicle mechanic as he actually performed that position in the military. Plaintiff further argues that the ALJ should have considered his position to be a composite job and found that he does not have the RFC to perform all components of that job. Plaintiff directs the Court to various provisions of the Program Operations Manual System ("POMS"), instructions promulgated by the Social Security Administration to guide the internal processing of claims for benefits, that specifically address past relevant work in the military, as here.

POMS provides that when considering whether the claimant has the ability to perform his past relevant work in the military, the job must be evaluated as the claimant describes performing it. POMS DI 25005.020(D).[2] Because "[t]he DOT does not provide information about the physical and mental demands of all military occupations, [the Commissioner is] not always able to evaluate a military occupation as generally performed in the national economy." *Id.* Additionally, "[i]f the claimant's military occupation is not in the DOT, and if the claimant is unable to perform PRW as he . . . describes it," the Commissioner is directed "to proceed to step 5." *Id.*

"While POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force." *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015). "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Id.* "Generally, a court defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law." *Taylor v. Saul*, No. 4:18-CV-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019).

The ALJ's opinion did not consider POMS DI 25005.020(D). And the ALJ's opinion clearly states that at step four he found that Plaintiff's military job was not in the DOT and that Plaintiff could do his aviation support position, not at the heavy level as it was actually performed, but at the light level as it is generally performed in the national economy. (Tr. 22 & n.23.) Plaintiff's position falls squarely within one of POMS provisions, and the ALJ declined to cite, acknowledge, or follow its guidance. This was error. *Cf. Heidi M. v. Berryhill*, No. CV 17-412PAS, 2018 WL 6788034, at *4 (D.R.I. Dec. 26, 2018) (finding no error based on a violation

---

[2] POMS can be found on the official website of the U.S. Social Security Administration at https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited February 7, 2020).

15

of POMS DI 25005.020(D) where ALJ evidenced clear intent to rely on VE's testimony that claimant could do his past relevant work "as performed"). The question is, therefore, whether this error was harmless.

As the Fifth Circuit has repeatedly stated, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Accordingly, "[t]his court will not vacate a judgment unless the substantial rights of a party have been affected." *Id.* The ALJ concluded that Plaintiff could not only perform his past relevant work from his time serving in the Marines but also concluded that Plaintiff could perform his past relevant work as an auto mechanic, which he performed after his discharge from the military and continued to perform on a part-time basis during the period of alleged disability. (Tr. 21–22.) Because the record supports the ALJ's finding as to the auto mechanic job, the ALJ's error as to the military work is harmless and does not require remand.[3]

Plaintiff contends that the ALJ also erred in his finding with respect to the auto mechanic position because the DOT characterizes an auto mechanic as requiring skilled work and there is no evidence in the medical records that Plaintiff has the capacity to perform skilled work. *See* DOT 620.261-010 (classifying auto mechanic as a position requiring skilled work). In advocating for remand, Plaintiff argues that there is a conflict between the medical evidence that the ALJ referenced in his hypothetical to the VE regarding Plaintiff's ability to work as an auto mechanic and the VE's testimony that the mental limitations contained in this evidence would not interfere with Plaintiff's ability to do skilled work.[4] (Brief [#17] at 16.) Plaintiff argues that,

---

[3] Because the Court finds the error regarding Plaintiff's military work to be harmless, the Court need not and will not address Plaintiff's composite job argument.

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or

16

rather than evaluating this alleged conflict, the ALJ improperly eliminated the conflict by according the medical evidence "no weight." (*Id.*)

The ALJ's opinion directed the VE to assume that the claimant is "limited in the manner described by Exhibit 3A-9." (Tr. 61.) This exhibit is the state agency disability determination at the reconsideration level from November 16, 2017. (Tr. 82–96.) Although the exchange between the ALJ and the VE regarding this medical evidence focused primarily on the postural and manipulative limitations assessed by the state agency, the RFC in that exhibit also includes a mental evaluation, which found Plaintiff to be have limitations in all four functional areas—understanding and remembering; concentration and pace; social interactions; and adaption.[5] (Tr. 91–93.) Specifically, the agency consultant concluded that Plaintiff was moderately limited in the following, among other limitations: his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; his ability to interact appropriately with the general public; his ability to accept instructions and respond appropriately to criticism from supervisors; his ability to respond appropriately to changes in the work setting; and his ability to set realistic goals or make plans independently of others, among other limitations. (Tr. 91–93.) Yet the agency consultant also concluded that Plaintiff was able to do the following,

---

quantity of material to be produced. . . . Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[5] The following four functional areas are considered in rating the degree of a claimant's functional limitation throughout the review process: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[5] 20 C.F.R. § 404.1520a(c)(3).

which seems to contradict with the above findings: "Claimant able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, interact [with] others, and respond to changes." (Tr. 93.)

The ALJ indeed stated that he gave this evaluation "no weight" because it was not consistent with the record as a whole. (Tr. 21.) Even assuming this finding caused some sort of conflict, as argued by Plaintiff, the ALJ did not commit error in making his step four determination as to the auto mechanic position. An ALJ is "not required to adopt any prior administrative medical findings." *See* 20 C.F.R. § 404.1513a(b)(1). Moreover, the fact that the ALJ discounted this evidence that the VE purportedly considered in rendering his opinion on Plaintiff's ability to do his past relevant work does not mean that there was not other substantial evidence supporting the ALJ's determination that Plaintiff could still work as an auto mechanic. Most importantly is the evidence, expressly noted by the ALJ, that Plaintiff has continued to work as an auto mechanic since 2016 during the period of alleged disability. (Tr. 20.) Although Plaintiff testified that he worked less than 20 hours a week, the ALJ found it significant that there is evidence that as of January 2018 Plaintiff was still traveling to a "shop" every day, where he works with coworkers and gets along well with them. (Tr. 20, 1179.) The Commissioner maintains that Plaintiff's demonstrated ability to continue working as an auto mechanic is substantial evidence of his ability to perform skilled work. This Court agrees.

It is appropriate for the Court to consider daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995). *See also Nunnery v. Soc. Sec. Admin.*, No. CV 16-14772, 2017 WL 9362502, at *5 (E.D. La. Aug. 14, 2017), report and recommendation adopted, No. CV 16-14772, 2017 WL 4803932 (E.D. La. Oct. 25, 2017) (considering evidence that plaintiff continued to work part-time as licensed practical nurse at

medium exertional level as substantial evidence of non-disability). The ALJ found this evidence significant in assessing Plaintiff's ability to perform skilled work. (Tr. 20.) Because there is substantial evidence to support the ALJ's conclusion that Plaintiff could perform his past relevant work as an auto mechanic, the ALJ's error with respect to Plaintiff's military work is harmless.

## V. Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff was not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 10th day of February, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE